UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X **19 CR 107 (AT)**
UNITED STATE OF AMERICA,

-against-

JOHN ULRICH,

Defendant.
-----------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF DEFENDANT ULRICH'S PRE TRIAL MOTIONS**

Michael K. Burke, Esq. (MKB 7554)
Hodges, Walsh & Burke, LLP
*Attorney for Defendant John Ulrich*
55 Church St., Suite 211
White Plains, New York 10601
(914) 385-6030

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of John Ulrich's pre-trial motions. John Ulrich has been charged in the four count indictment with violations of 18 U.S.C. Section 1954, 18 U.S.C. section 371, 18 U.S.C. section 1349, and 18 U.S.C. section 1347.

## ARGUMENT

### I. MOTION TO INSPECT THE GRAND JURY MINUTES AND TO DISMISS THE INDICTMENT

A grand jury is structured to be independent of the Government, but it is entirely dependent upon the prosecutors for legal guidance and the presentation of evidence. The only check upon this unbalanced process is the judicially imposed requirement that the prosecution must properly instruct the grand jury on the appropriate laws to be considered in rendering its judgment. Even that protection has been diluted by the fact that these instructions are shrouded from review by grand jury secrecy laws.[1] However, any analyses of the purposes supporting grand jury secrecy indicate that they are inapplicable to the legal instructions given by the prosecutor to the grand jury.

The Supreme Court has long recognized five goals that grand jury secrecy seeks to advance:

> '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under

---

[1] In contrast New York State courts are required to review the grand jury minutes upon request to determine the sufficiency of the evidence and the adequacy of the instructions. *See* N.Y. C.P.L.§ 210.30. That review process serves to assure the independent role of the grand jury process.

> investigation, and from the expense of standing trial where there was no probability of guilt.'

*United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681-82 n.6 (1958) (*quoting United States v. Rose*, 215 F.2d 617, 628-629 (3d Cir. 1954)). *See also Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979).

Each of these enumerated concerns seeks to protect the integrity of the grand jury's fact-finding process, principally by preventing public disclosure of the identity of witnesses to, or targets of, grand jury investigations. Disclosure of minutes of instructions to the grand jury, on the other hand, does not implicate even one of these concerns. Thus – as at least one court has concluded – only a minimal showing should be required where the application for grand jury minutes is limited to the instructions given to the grand jurors. *See United States v. Keller*, No. 89 CR 793, 1990 WL 6642 at *4 (N.D. Ill Jan 5, 1990) ("[i]n the present case, since none of the enumerated purposes [of grand jury secrecy] would be served by preventing disclosure, defendants need only make a minimal showing.").

The Supreme Court has recognized that grand jury secrecy yields more easily where the necessity for secrecy is less relevant. *See Douglas Oil*, 441 U.S. at 223 ("It is . . . clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."). The determination requires a balancing of the litigant's need for the grand jury information against the public's interest in continued secrecy. *See id.* ("[D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy . . . ."). In this case, given the practically non-existent public interest in continued secrecy of the legal instructions provided to the grand jury, the limited nature of the requested material, and the real potential that the grand jury was not

properly instructed on certain issues, the balance tips decidedly in favor of disclosure to the defendants.

As noted, the Assistant United States Attorney who presented the case to the grand jury for a vote on an indictment had an obligation to properly instruct the grand jury on the applicable law, to wit, the elements of the alleged briberies and health care fraud. *See United States v. Twersky*, No S2 92 Cr. 1082 (SWK), 1994 WL 319367 at *4 (S.D.N.Y. June 29, 1994) (AUSAs must give "sufficient information concerning the relevant law" to the grand jury); *United States v. Peralta*, 763 F. Supp. 14, (S.D.N.Y. 1991) (instructions misstating law to grand jury require dismissal of indictment). In a factually and legally complicated case such as this, the obligation to insure that the grand jury fully understood the law before considering the indictments is even greater. The standard procedure in instructing Southern District grand juries is simply to read the relevant statutes to the grand jury. In this case that would be insufficient to properly charge the Grand Jury.

Finally, and alternatively, should the Court deny our request for access to the grand jury instructions, for all of the same reasons set forth above, Ulrich respectfully requests that the Court review the grand jury minutes and instructions *in camera* to determine whether the Indictment was returned by a properly instructed body.

## II. MOTION FOR DISCLOSURE OF *BRADY* MATERIAL, THE GOVERNMENT'S TRIAL EVIDENCE, AND WITNESS STATEMENTS

Pursuant to Fed. R. Crim. P. 16(a)(1)(E), upon a defendant's request, the Government must disclose and permit inspection and thc copying of any of those items the Government intends to use in its case-in-chief at trial. Additionally, other items of discovery should be provided depending on the given case. In this case, it is anticipated that the Government may be

calling witnesses who have prior criminal records, or who have been involved in criminality and who have agreed to cooperate with the Government in this case and in other investigations.

Furthermore, pursuant to Fed. R. Crim. P. 16(a)(1)(F)(iii), it is respectfully requested that the Government provide the defense with the identity of its experts and produce any summary reports he or she may have produced in this matter. Ulrich also requests the following:

(1) Transcripts of any testimony given relative to any physical or mental examination, or scientific test or experiment relating to this case. Transcripts of any testimony given by any person in relation to this case offered, or which are intended at trial to be offered, concerning "expert facts" offered because the facts are not commonly known to the jurors and are believed helpful or necessary to the determination of any issue in the case.

(2) A summary of the testimony of any proposed expert witness, describing the witness' testimony, the data upon which the witness will testify and the basis for the opinions or factual evidence to be offered.

(3) Any prior occasions on which that expert has testified on a similar subject, including any transcript of that testimony.

(4) A current and detailed *curriculum vitae* for any proposed expert witness.

(5) A statement as to the extent of use of "summarized" testimony, or hearsay testimony, in lieu of direct testimony by those with direct knowledge, by Government agents, or investigators, accountants, experts, employees and any other person presented in the grand jury, indicating the specific counts of the indictment for which the evidence was supplied by summaries of "evidence" and the nature of the evidence summarized. Specifically, in this case, involving allegations of the receipt of bribery payments and healthcare fraud, and the extent to which it was presented with purely summary information about the claims.

The defense requests that the Court direct the Government to provide copies of any evidentiary exhibits it intends to offer at trial, before trial, so that such items can be reviewed by the defense. Also, any evidence bearing on the credibility of any potential Government witness at trial should be disclosed to the defense, *United States v. Chitty*, 760 F.2d 425 (2d Cir. 1985); *Giglio v. United States*, 92 S.Ct. 763 (1972) including but not limited to their criminal records, probation files, arrest records, any information concerning any pending criminal investigation, any written or oral promises of consideration or benefits given to any witness. The examination for and production of any law enforcement file or report which contains impeachment material of any potential witness should be directed by this Court (*see*, *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

Finally, the admission of a co-defendant's post-conspiracy confession or statement implicating the defendant, John Ulrich, would constitute reversible error where that co-defendant did not testify. *Bruton v. United States*, 391 U.S. 123 (1968). The defendant's Sixth Amendment right to confrontation would be violated in such instance, and a limiting instruction or court redaction may not be sufficient to protect the defendant's right to fair trial. *See*, *United States v. Wingate*, 520 F.2d 309 (2d Cir. 1975); *United States v. Parks*, 285 F.3d 1133 (9th Cir. 2002); *United States v. Cleveland*, 590 F.2d 24 (1st Cir. 1991). Without disclosure of any such statements, the defense will not be in a position to raise any appropriate *Bruton* issues for the Court to resolve prior to trial.

John Ulrich also requests any search warrants utilized in this case. In particular, any search warrants for cell phone records and any expert reports relating to extraction of data from cellphones including but not limited to cell site data, PEN registry data, text messages, emails, photos, Facebook, Twitter, Snap Chat, Instagram or other social media or electronic data.

Discoverable materials falling within the scope of *Brady* and the Jencks Act also constitute exceptions to the general rule of grand jury secrecy. Thus, a defendant seeking pretrial disclosure of grand jury transcripts other than those he can obtain as *Brady* material or under the Jencks Act must demonstrate that a "particularized need" for the materials outweighs the policies supporting the secrecy of grand jury proceedings. *See, e.g., In re Matter of Grand Jury Proceedings, Special September, 1986,* 942 F.2d 1195, 1198 (7th Cir. 1991).

## A. MOTION FOR FAVORABLE EVIDENCE

There is an affirmative duty upon the prosecution to produce evidence that is favorable to the accused, either as direct or impeaching evidence, and the suppression of such evidence is a violation of due process. *Brady v. Maryland*, 373 U.S. 83 (1963). Disclosure is required even without a request by the defendant, if it includes impeachment evidence, and evidence in the files of the police, even if not known to the prosecutor. *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*, 473 U.S. 667 (1985); *Strickler v. Greene*, 527 U.S. 263 (1999). If it is debatable whether material constitutes *Brady* material, the material should be submitted to the Court for in camera inspection. *United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003).

It is believed that law enforcement agents have conducted many interviews of individuals concerning the investigation into alleged bribes and fraud that resulted in the instant indictment. It is further believed that the Government may have performed surveillance of the defendant and alleged co-conspirators during the course of this investigation. Defendant is entitled to any surveillance of defendant or these co-conspirators unnamed in the indictment. The Government may choose not to call all of these individuals as witnesses in this case. Therefore, the interview notes and reports concerning these individuals will not be disclosed to the defense. These items

may contain information which will be beneficial to Ulrich and his defense. The Government should be directed to review these items and disclose those which fall within the parameters of *Brady* and its progeny. If the Government has some question whether these items should be disclosed, they should seek the Court's guidance.

**B. DISCLOSURE OF WITNESS STATEMENTS**

Rule 26.2 of the Federal Rules of Criminal Procedure provides that after a witness has testified on direct examination, the Court, upon motion by a party who did not call the witness, must order production of any statement of the witness that is in the calling party's possession and that relates to the subject matter of the witness's testimony.

The Courts have broad discretion in the timing of this disclosure based on the need for judicial economy, and the goals of smooth, efficient court proceedings. The defense respectfully requests that the Government be directed to disclose witness statements at least thirty (30) days prior to jury selection. This will allow defense counsel to have adequate preparation time in reviewing those statements so that witness examinations can proceed efficiently.

**III. ULRICH IS ENTITLED TO A BILL OF PARTICULARS**

The Second Circuit has stated that the purpose of a bill of particulars is: "[to identify] the nature of the charges pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

**A. Ulrich is Entitled to Particulars Regarding The Identity of Co-Conspirators**

Counts One of the Indictment charges that Ulrich "and others known and unknown... agree[d] together and with each other to commit an offense against the United States." Count

Three of the Indictment charges that Ulrich "and others known and unknown… agree[d] together and with each other to commit honest services health care fraud."

Courts routinely order the disclosure of the names of alleged co-conspirators in similar circumstances. *See United States v. Lino*, 2001 WL 8356 at *12-13 (S.D.N.Y. Dec. 29, 2000) ("Requests for names of unindicted co-conspirators are fairly common and are often granted by the district courts"; disclosure of co-conspirators' identities is appropriate where conspiracy allegation may encompass co-conspirators that the defendant has never met); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (ordering bill of particulars containing names of co-conspirators in complex Medicare fraud prosecution and suggesting such disclosure are routine); *United States v. Savin*, 2001 WL 243533 (S.D.N.Y. 2001) (requiring particularization of "others" to whom payments made); *United States v. Mayo*, 230 F. Supp 85 (S.D.N.Y. 1964) (Weinfeld, J.)(phrase "among others" did not invalidate indictment but called for amplification in bill of particulars).

**B. Bill of Particulars as to the Forfeiture Allegation**

The forfeiture allegation for Counts One through Four in the Indictment seeks forfeiture of "all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses." Indictment ¶ 22.

A bill of particulars will generally be considered sufficient if it simply identifies the assets subject to forfeiture. *see United States v. Columbo*, 2006 WL 2012511 (S.D.N.Y. 2006). In this case, Ulrich seeks a bill of particulars with respect to the forfeiture aspect of this matter, asking for the Government to specify all property and proceeds traceable to the offenses, a description of the basis for that determination, as well as the basis for the claim that any individual item of real or personal property is subject to forfeiture.

Likewise, it has long been settled that the Government must particularize the property that it claims to be subject to forfeiture *See, e.g., United States v. Moffitt, Zweling & Kemler, P.C.*, 83 F.3d 660, 665 (4th Cir. 1996) ("A bill of particulars is an appropriate way to pinpoint certain assets subject to forfeiture."); *United States v. Raimondo*, 721 F.2d 476, 477-78 (4th Cir. 1984) (approving of bill of particulars "describing in detail the property subject to forfeiture"); *United States v. Grammatikos*, 633 F.2d 1013, 1024 (2d Cir. 1980) (approving disclosure: "the bill of particulars identified each item of property deemed susceptible to seizure and enabled appellant to marshall evidence in defense of the forfeiture"). Ulrich is asking for such particularization and is entitled to it.

## IV. ULRICH REQUESTS ALL 404(b) EVIDENCE

Counsel for Ulrich requests that the Court order the Government to disclose all evidence of other or similar crimes, wrongs or acts which it will will seek to introduce in evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. We ask that the Court set a date of sixty days prior to trial for Government notification to defense counsel of such evidence, if any. This will give all parties and the Court time to brief and hear arguments on motions to preclude such evidence prior to trial. *See United States v. Lino*, 2001 WL 8356 at *22 (S.D.N.Y. 2000) (ordering disclosure of 404(b) evidence 60 days before trial); *United States v. McDonald*, 2002 WL 2022215 (E.D.N.Y. Aug. 6, 2002) (ordering disclosure of 404(b) evidence 30 days prior to trial).

**WHEREFORE**, it is respectfully requested that the Court grant the relief sought in the annexed Notice of Motion.

Dated: July 30, 2019
White Plains, New York

/s/ Michael K. Burke
Michael K. Burke, Esq. (MKB 7554)
Hodges, Walsh & Burke, LLP
*Attorney for Defendant John Ulrich*
55 Church St., Suite 211
White Plains, New York 10601
(914) 385-6030